UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK EDWARD MAHAFFEY (#309290),

                                        CASE NO. 2:13-CV-14646
                   Plaintiff,           JUDGE AVERN COHN
                                        MAGISTRATE JUDGE PAUL J. KOMIVES
v.

JOSHUA A. BUSKIRK, SUSAN B. MCCAULEY,
CHARLES TURNER, FRANCES HINSLEY,
KAREN HAMBLIN, JEFFREY STIEVE,
S. LAUGHHUNN, SHARP, JACOBS,
HARRIET SQUIER and HARESH B. PANDYA,

                   Defendants,
_____/

**REPORT AND RECOMMENDATION REGARDING HAMBLIN, MCCAULEY,
PANDYA AND TURNER'S FEBRUARY 13, 2014 DISPOSITIVE MOTION (Doc. Ent. 22)**
Table of Contents

I.     RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       A.   Plaintiff filed his complaint against eleven (11) defendants. . . . . . . . . . . . . . . . 2
       B.   Five (5) defendants have yet to appear. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
       C.   Four (4) MDOC defendants have filed a dispositive motion. . . . . . . . . . . . . . . 7
       D.   Plaintiff's complaint alleges deliberate indifference to a serious medical need. . . 8
       E.   Plaintiff has not alleged the requisite personal involvement of McCauley,
            Hamblin and Turner or the deliberate indifference of McCauley to state a claim
            against these defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
       F.   Plaintiff has exhausted his claim against Pandya related to his January 10, 2012
            decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       G.   McCauley, Hamblin, Turner and Pandya are entitled to Eleventh Amendment
            immunity with regard to plaintiff's claims against them in their official capacities
            to the extent plaintiff seeks damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
       H.   At this time, the Court need not address whether McCauley, Hamblin, Turner and
            Pandya are entitled to qualified immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III.   NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . 24

I.  **RECOMMENDATION:**  The Court should grant in part and deny in part the February

13, 2014 motion for summary judgment or, in the alternative, motion to dismiss.  Doc. Ent. 22.

II.  **REPORT:**

A.  **Plaintiff filed his complaint against eleven (11) defendants.**

1.  Mark Edward Mahaffey (#309290) is currently incarcerated at the Michigan Department

of Corrections (MDOC) Michigan Reformatory (RMI) in Ionia, Michigan, where he is serving a

sentenced imposed on April 20, 2010 for a December 1, 1996 violation of Mich. Comp. Laws §

750.520c(1)(a).  Case No. 9888520-FC (Jackson County).[1]

On November 8, 2013, while incarcerated at RMI, Mahaffey filed the instant lawsuit

against eleven (11) defendants: Joshua A. Buskirk; Susan B. McCauley; Charles Turner; Frances

Hinsley; Karen Hamblin; Jeffery Stieve; S. Laughhunn; Sharp; Jacobs; Harriet Squier and

Haresh B. Pandya.  Doc. Ent. 1 at 1, 5-7.  *See also* Doc. Ent. 1 at 16, 25; Doc. Ent. 13; Doc. Ent.

21; Doc. Ent. 22-3 at 46; Doc. Ent. 29.

2.  The facts underlying plaintiff's complaint stem from a September 27, 2001 back injury

he sustained lifting weights while housed within the MDOC.  On November 14, 2001, while

incarcerated at Ojibway Correctional Facility (OCF) in Michigan's Upper Peninsula, a CMS

Authorization Request was completed and an MRI of the lumbar spine was approved that same

day.  On December 17, 2001, Mahaffey underwent an MRI of the lumbar spine at Grand View

Hospital in Ironwood, Michigan.  Also during 2001, plaintiff claims, he was sent to Marquette

General Hospital to see a neurosurgeon, who recommended that plaintiff be given physical

_____

[1]On August 23, 2012, Mahaffey filed a petition for writ of habeas corpus regarding this
conviction.  Rule 5 materials were filed on August 1, 2013, and the case was reassigned to Judge
Levy on May 13, 2014.  *See Mahaffey v. Scutt*, Case No. 5:12-cv-13743-JEL-DRG (E.D. Mich.).

therapy; however, for years the MDOC refused to provide such therapy." *See* Doc. Ent. 1 at 9 ¶¶ 1-2, Doc. Ent. 1 at 40-41. According to plaintiff, he "was only on pain medication for approximately 5 months." Doc. Ent. 1 at 9 ¶ 3.

On May 23, 2005, plaintiff was ordered a special accommodation which noted that he was at risk of heat-related illness; on March 15, 2007, plaintiff was ordered a special accommodation for extra bedding/clothing and a cotton blanket; and on July 8, 2008, plaintiff was ordered a special accommodation for a bottom bunk. Doc. Ent. 1 at 31.

On June 5, 2009, plaintiff experienced a reoccurrence of his back injury. Doc. Ent. 1 at 9 ¶ 5. He was seen that day by James Heisel, M.D. at Allegiance Health in Jackson, Michigan, where an MRI of the lumbar spine was performed. Doc. Ent. 1 at 27-29. According to plaintiff, Heisel recommended physical therapy and, if that did not work, surgery. Doc. Ent. 1 at 9-10 ¶ 6. Plaintiff claims he was given pain medication and was only provided physical therapy 5 to 6 times. Doc. Ent. 1 at 10 ¶ 7.

On September 8, 2009, plaintiff was transferred to RMI in Ionia, Michigan. Here, plaintiff claims, Dr. Sharp "took all of [his] medications and ordered no more physical therapy." Doc. Ent. 1 at 10 ¶ 8.

On October 12, 2010, plaintiff was transferred to Chippewa Correctional Facility (URF) in Michigan's Upper Peninsula. Here, he was seen by a doctor who placed him on pain and sleeping medications. Doc. Ent. 1 at 10 ¶ 9.

On January 21, 2011, plaintiff was ordered a special accommodation for a wood cane. He was also ordered approximately six (6) months of a "Tens Unit." Doc. Ent. 1 at 31. During July 2011, plaintiff was transferred from URF to the G. Robert Cotton Correctional Facility

(JCF) in Jackson, Michigan, where he was seen by Dr. Miles, who prescribed "triggerpoint" injections in plaintiff's lower back.  Doc. Ent. 1 at 10 ¶ 10.

However, plaintiff alleges that on January 10, 2012, Haresh B. Pandya, M.D., who had never seen plaintiff, took him off all medications.  Doc. Ent. 1 at 10 ¶ 10, Doc. Ent. 22-3 at 46 (MDOC BHCS Clinical Progress Note).  According to plaintiff, Miles continued to treat him (*see*, *i.e.*, Doc. Ent. 22-3 at 47-48 [January 17, 2012], Doc. Ent. 22-3 at 49-51 [February 14, 2012]), but Corizon and Stieve refused any pain medication or treatment that Miles ordered.  When Miles was "released" from his duties at JCF, plaintiff was seen by Dr. Jacobs, who stated there was nothing wrong with plaintiff.  Doc. Ent. 1 at 10-11 ¶¶ 11-12.

On March 1, 2012, Mahaffey had an appointment with a medical provider to be evaluated for back pain.  He was given a trigger point injection.  On March 18, 2012, a Health Care Request Form was submitted regarding back pain and requesting an appointment with a medical provider for an injection.  Doc. Ent. 22-3 at 43.[2]

On or about September 13, 2012, plaintiff was seen by Dawn M. Lybarger, N.P., who sought a neurosurgeon evaluation of chronic back pain and neurosurgery.  However, Harriet Squier, M.D.'s September 17, 2012 review noted, "in the absence of progressive motor findings, there is no medical necessity for neurosurgery referral.  Please discuss exercises and walking with patient.  Weight loss will be beneficial as well."  According to plaintiff, he had never seen Squier.  Doc. Ent. 1 at 11 ¶ 13, Doc. Ent. 1 at 36-38.

---

[2]On May 23, 2012, Mahaffey was seen for ringworm, at which time he was prescribed Lotrimin topical solution and Diflucan tablets.  Doc. Ent. 22-3 at 33, 38-40.  It seems that this visit was associated with JCF-01280.  Doc. Ent. 22-3 at 25-40.

On December 8, 2012, plaintiff was seen by a Medical Provider (MP), whose assessment "showed no motor weakness, no sensory loss, coordination, balance and gait intact." Doc. Ent. 22-3 at 24. On December 17, 2012, Mahaffey received copies of his medical records from Allegiance Health Imaging Department and Grandview Hospital. Doc. Ent. 22-3 at 23.

On or about December 23, 2012, plaintiff initiated **MDOC Grievance Identifier JCF-2012-12-2947-12D1**, which alleged that JCF medical staff were not and had not "taken corrective action as a money saving measure[,]" and sought surgical correction of his spine. Eventually, in the Step III grievance appeal, plaintiff alleged that he was seen by an MP on January 24, 2013, who took plaintiff's cane and stated plaintiff "was fat and there [was] nothing wrong with [him][.]" Doc. Ent. 1 at 11 ¶¶ 14-16; Doc. Ent. 1 at 14-20; Doc. Ent. 22-3 at 19-24.

In the meantime, on January 26, 2013, plaintiff was transferred to Saginaw Correctional Facility (SRF), where he was seen by Joshua A. Buskirk, P.A.. The February 5, 2013 special accommodation order by Buskirk was for three (3) months of a bottom bunk. According to Mahaffey, Buskirk thought he (Mahaffey) was faking and stated, "You[] [are] just a fat ass inmate and your only problem is you[] [are] overweight." Doc. Ent. 1 at 11-12 ¶ 17, Doc. Ent. 1 at 32.

On February 5, 2013, Mahaffey sent a Health Care Request to SRF's Health Unit Manager (HUM) Susan B. McCauley. Apparently, Mahaffey stated: "I am writing the HUM to see if he can let me see the Dr. and not the PA because he refuses m[e] my accommodations and treatment. I need these accommodations for bottom bunk, cane, and cotton blankets. Can you please do something[?]" Among other things, McCauley's February 6, 2013 MDOC Kite Response states that he (Mahaffey) did not meet the criteria for a cane and cotton blankets.

McCauley further noted, "[i]nmates are not allowed to chose their providers, or ask to see one, when they don't like the decisions of another."  Doc. Ent. 1 at 12 ¶ 18, Doc. Ent. 1 at 34.

On or about February 11, 2013, plaintiff initiated **MDOC Grievance Identifier SRF-2013-02-0271-12I**, wherein he sought the renewal of his accommodations.  Eventually, in the Step III grievance appeal, plaintiff stated that Buskirk "never did anything [for him] and using the ca[ne] takes pressure of[f] [his] back because [he is] in pain [all] day long. [Buskirk] should not be able to see [him] and [he] should [see] the Doctor he[re] a[t] SRF."  Doc. Ent. 1 at 12 ¶¶ 19-21; Doc. Ent. 1 at 21-26; Doc. Ent. 22-3 at 9-13.

On June 20, 2013, plaintiff was transferred back to RMI in Ionia, Michigan, where he saw P.A. Buller.  According to plaintiff, Buller gave plaintiff a special accommodation for "[n]o more than 20 stairs[,]" which plaintiff claims is equivalent to a ground floor accommodation. Although Buller and plaintiff discussed plaintiff's back problems, Buller could do nothing more. Doc. Ent. 1 at 12 ¶ 22.

**3.**     In his November 8, 2013 complaint, plaintiff seeks injunctive relief in the form of (1) sending him to a neurosurgeon for evaluation and (2) providing him with the back surgery of which he is allegedly in need.  He also seeks compensatory and punitive relief based on defendants' alleged deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.  Doc. Ent. 1 at 4.

**4.**     On February 13, 2014, Corizon defendants Buskirk and Squier filed a waiver of answer pursuant to 42 U.S.C. § 1997e(g)(1).  Doc. Ent. 20 at 1-2.  They also filed a jury demand (Doc. Ent. 20 at 3-4) and affirmative defenses (Doc. Ent. 20 at 5-9).

**B.**     **Five (5) defendants have yet to appear.**

Thus far, six (6) of the defendants have appeared - Buskirk and Squier of Corizon (*see* Doc. Entries 14-19) and Hamblin, McCauley, Pandya and Turner of the MDOC (*see* Doc. Entries 9, 10, 11, 12 & 21).  However, five (5) of the defendants have yet to appear: F. Hinsley of the MDOC's JCF,[3] Stieve, Laughhunn of the MDOC's Bureau of Health Care Services,[4] Sharp and Jacob.

Accordingly, I have entered orders regarding service upon those defendants who have not appeared.  *See* Doc. Entries 28, 29.[5]

**C.    Four (4) MDOC defendants have filed a dispositive motion.**

Judge Cohn has referred this case to me for pretrial matters.  Doc. Ent. 24.  Currently before the Court is Hamblin, McCauley, Pandya and Turner's February 13, 2014 motion for summary judgment or, in the alternative, motion to dismiss.  Doc. Ent. 22.  Their arguments are based upon the allegations that (I) "HUM McCauley, Nurse Supervisor Hamblin and RN Turner merely denied Plaintiff's administrative grievance[,]" (II) "Plaintiff did not file a grievance regarding his allegations against Dr. Pandya[,]" and (III) "Defendants acted reasonably and did not violate Plaintiff's clearly established constitutional rights."  Doc. Ent. 22 at 4.[6]

---

[3]F. Hinsley appears to be an MDOC employee.  Doc. Ent. 1 at 19 (MDOC Step I Grievance Response).

[4]S. Laughhunn, R.N., appears to be an MDOC employee.  Doc. Ent. 1 at 16, 25 (MDOC Step III Grievance Responses).

[5]On May 20, 2014, the U.S. Marshal acknowledged receipt of documents for service of process.  Doc. Ent. 31.

[6]A response to this motion was due on March 19, 2014.  Doc. Ent. 23.  The reply was due on March 31, 2014.  Doc. Ent. 25.

On March 12, 2014, plaintiff filed a three-page response.  Doc. Ent. 27.  However, by way of my April 23, 2014 order (Doc. Ent. 28), plaintiff's motion for extension (Doc. Ent. 26) was granted and plaintiff was permitted until Friday, May 23, 2014 by which to file a supplemental response to defendants' motion (Doc. Ent. 22).  Plaintiff did so on May 14, 2014.  Doc. Ent. 30.

**D.    Plaintiff's complaint alleges deliberate indifference to a serious medical need.**

Plaintiff complains that defendants have been deliberately indifferent to plaintiff's serious medical needs in contravention of the Eighth Amendment.  Doc. Ent. 1 at 4.  As the United States Supreme Court has stated, the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'"  *Farmer v. Brennan*, 511 U.S. 825, 832-833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  "*[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837 (emphasis added).

Specifically, the government is obligated "to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  As the Supreme Court has instructed:

> . . . deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, [428 U.S. 153,] 173 [(1976)], proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [§] 1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976) (footnotes omitted).  The Supreme Court further

explained:

> . . . in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  *In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.*  It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-106 (emphasis added).  *See also Wilson v. Seiter*, 501 U.S. 294, 297

(1991) (citing *Estelle*, 429 U.S. at 104), *Boretti v. Wiscomb*, 930 F.2d 1150, 1153 (6th 1991)

(citing *Estelle*, 429 U.S. at 103-105).

**E.    Plaintiff has not alleged the requisite personal involvement of McCauley, Hamblin and Turner or the deliberate indifference of McCauley to state a claim against these defendants.**

**1.**    Within his complaint, plaintiff notes that Hamblin upheld the Step I denial of JCF-02947

(Doc. Ent. 1 at 19).  Doc. Ent. 1 ¶ 14.  Plaintiff also describes his February 5, 2013 Health Care

Request to McCauley, identifies McCauley as Buskirk's direct supervisor and refers to

McCauley's February 6, 2013 kite response (Doc. Ent. 1 at 34), claiming that "once notified

Defendant McCauley refused to do anything about the problems that [he] was faced with."  Doc.

9

Ent. 1 ¶ 18.  Furthermore, plaintiff refers to McCauley's February 14, 2013 review of Turner's February 14, 2013 Step I grievance response in SRF-00271 (Doc. Ent. 1 at 22-23), noting that Turner's denial was upheld by McCauley, the SRF HUM.  Doc. Ent. 1 ¶ 19.

**2.**    Defendants argue that McCauley, Hamblin and Turner "merely denied Plaintiff's administrative grievance."  Doc. Ent. 22 at 9.  Citing ¶¶ 14, 18 & 19 of the complaint, defendants contend that "Mahaffey has not made any factual allegations showing these Defendants' personal involvement in the complained-of acts, and merely insinuates that these Defendants did not rectify the particular situation when brought to their attention."  Doc. Ent. 22 at 11-12.

**3.**    Plaintiff's March 12, 2014 response cites district court cases[7] and contends that "[o]nce supervisory staff were made aware of [his] chronic care problems, and they failed to address the problem, they may be held liable[.]"  Doc. Ent. 27 at 1-2.  Then, after pointing out that RN Turner is likely not the supervisor of the Physician's Assistant (presumably Buskirk) grieved in SRF-00271 (*see* MDOC PD 03.02.130 ¶ X),[8] plaintiff argues that Turner should not have been the respondent and that "once [Turner] responded and the Plaintiff pointed out the issue, it was RN Turner[']s [responsibility] to notify a supervisor for 'corrective action.'"  Doc. Ent. 27 at 2.

---

[7]*See Lavender v. Lampert*, 242 F.Supp.2d 821, 840-841 (D. Or. 2002) ("Because plaintiff has alleged and shown that defendant Lampert [SRCI Superintendent] knew of the facts underlying the alleged Eighth Amendment violations and failed to act to prevent further violations, plaintiff has sufficiently alleged personal participation[,]" and "[b]ecause plaintiff has alleged and demonstrated that defendant Lanny Ryals [SRCI Health Services Manager] knew of the alleged Eighth Amendment violations and failed to act to prevent them, plaintiff has sufficiently alleged personal participation."); *Marcotte v. Monroe Corrections Complex*, 394 F.Supp.2d 1289, 1298 (W.D. Wash. 2005) ("Superintendent Moore and Dr. Kenney were aware of deficient infirmary nursing procedures and other health department citations and yet failed to take corrective action.").

[8]"The respondent shall generally be the supervisor of the person being grieved except for grievances involving the Parole Board[.]" MDOC PD 03.02.130, effective July 9, 2007, ¶ X.

Similarly, plaintiff's May 14, 2014 response claims that defendants "knew Mr. Mahaffey was in pain [b]ecause his [June 5, 2009] MRI from ALLEGIANCE HEALTH . . . showed he was in constant pain[.] [A]lso[,] his many grievances and medical kites all state he is in pain.  But yet nobody will do any thing for him and still continue to leave him in pain and suffering."  Doc. Ent. 30 at 1.  Plaintiff contends his back problem will not go away unless it is treated.  Doc. Ent. 30 at 1-2.  It is plaintiff's position that defendants "continue to [subject plaintiff to] tortur[e] and unne[c]essary suffering[,] [b]ecause they refuse to do anything about his injury."  Doc. Ent. 30 at 2.

Moreover, plaintiff explains, his injury has progressed since 2001, because no one has done anything about it.  For example, plaintiff's December 17, 2001 lumbar spine MRI revealed "[m]oderate-sized central disk herniation L4-5."  *See* Doc. Ent. 1 at 39-41.  Several years later, plaintiff's June 5, 2009 lumber spine MRI revealed:

1.   Mild to moderate degenerative disc disease from L2-L3 through L4-L5.
2.   There is a moderate sized central to left paracentral protrusion of the disc at L3-L4, with moderate spinal stenosis.
3.   There is a small broad central disc protrusion or chronic herniation at L4-L5, with mild to moderate spinal stenosis.

*See* Doc. Ent. 1 at 27-29.  Plaintiff claims it is now getting worse.  He claims to experience daily pain and an inability to work or even walk without being in constant pain, leaving him at risk for mental anguish.  According to plaintiff, defendants knowingly and willingly leave plaintiff in pain and harm's way.  Plaintiff contends that, "[i]f the injury is not corrected the . . . future harm could cause serious harm to Mr. Mahaffey."  Doc. Ent. 30 at 2 ¶ 2.

**4.**   The case law clearly indicates that § 1983 liability may not be based upon respondeat superior.  For example, the Sixth Circuit has generally stated:

11

§ 1983 liability must be based on more than respondeat superior, or the right to control employees. *See Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982). Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

**5.**     More specifically, the Sixth Circuit has dictated that defendants cannot be held liable under § 1983 where their only roles involved "the denial of administrative grievances or the failure to act[.]" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Thus, McCauley, Hamblin and Turner's grievance responses in JCF-02947 and SRF-00271 cannot be the only basis for plaintiff's § 1983 claims against these defendants.

**6.**     To be sure, plaintiff's claims against McCauley are also based upon her February 6, 2013 response to plaintiff's February 5 kite.  *See* Doc. Ent. 1 ¶ 18, Doc. Ent. 1 at 34.  The Court recognizes that "[t]he denial of the grievance is not the same as the denial of a request to receive medical care." *Martin v. Harvey*, 14 Fed. Appx. 307 (6th Cir. 2001).  Thus, further commentary is required as to this portion of plaintiff's claim against McCauley.

By way of background, prisoner requests for routine health services are discussed within MDOC PD 03.04.100 ("Health Services"), effective 12/29/10, ¶¶ LL-NN.  This report assumes that plaintiff's February 5, 2013 complaint against Buskirk was set forth in an MDOC Health Care Request (CHJ-549) and that Health Unit Manager (HUM) Susan B. McCauley's February 6, 2013 response was made in accordance with MDOC PD 03.04.100 ¶ MM.3.  As the kite response indicates, plaintiff's February 5, 2013 request stated:

12

> I am writing the HUM to see if he can let me see the Dr. and not the PA because he refuses m[e] my accomm[o]dations and treatment.  I need these accommodations for bottom bunk, cane, and cotton blankets.  Can you please do something[?]

On February 6, 2013, McCauley commented:

> You were evaluated by the PA on [February 5, 201[3]].  You were provided with a bottom bunk accommodation.  You do not meet criteria for a cane and cotton blankets.  Inmates are not allowed to chose their providers, or ask to see one, when they don't like the decisions of another.

Doc. Ent. 1 at 34.

To the extent McCauley's February 6, 2013 response to plaintiff's February 5 kite (*see* Doc. Ent. 1 ¶ 18, Doc. Ent. 1 at 34) is viewed as the denial of an administrative grievance or the failure to act, such claim could not be the only basis for plaintiff's § 1983 claim against McCauley.  *Shehee*, 199 F.3d at 300.

Furthermore, to the extent McCauley's February 6, 2013 response is viewed as a substantive denial of plaintiff's February 5, 2013 request for medical care, plaintiff's Eighth Amendment deliberate indifference claim against McCauley cannot be based merely upon plaintiff's dissatisfaction with McCauley's medical diagnoses or treatment.  *See, i.e., Ruiz v. Martin*, 72 Fed.Appx. 271, 276 (6th Cir. 2003) ("Ruiz's deliberate indifference claim must fail because it is, in essence, either a mere disagreement over his doctors' diagnoses and prescribed treatments or, at best, a claim of negligent medical treatment."); *Cooper v. Shelby County Justice Center*, No. 99-6365, 2000 WL 924604, 2 (6th Cir. June 26, 2000) ("Because Cooper admitted in his complaint that he had been examined by medical staff during his confinement at the SCJC and his allegations stem from his disagreement with the medical diagnosis and treatment provided to him, his allegations are insufficient to establish an Eighth Amendment claim for

13

deliberate indifference to a serious medical need."); *Stanton v. Holland*, No. 98-6621, 1999 WL 1024001, 2 (6th Cir. Nov. 4, 1999) ("Stanton's essential disagreement with and dispute over the diagnosis and treatment he has received during his incarceration at FMC-Lexington is insufficient to establish an Eighth Amendment claim for deliberate indifference to a serious medical need."); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, 4 (6th Cir. July 2, 1997) ("Although Cain may disagree with Dr. Huff's choice of treatment, he has failed to articulate facts which show that Dr. Huff acted with deliberate indifference."); *Morrison v. Edmondson*, No. 89-5188, 1989 WL 120629, 1 (6th Cir. Oct. 13, 1989) ("Because Morrison's allegation of inappropriate dosage amounts is essentially a disagreement over treatment, he failed to establish deliberate indifference to his medical needs."); and *Hunter v. Seiter*, No. 86-3811, 1987 WL 44547, 1 (6th Cir. Aug. 26, 1987) ("a review of the record indicates that the defendants have not exhibited a deliberate indifference to plaintiff's special medical needs and that plaintiff has received substantial treatment for his problem despite the fact that plaintiff disagrees with that treatment.") (citing *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)).

**F.     Plaintiff has exhausted his claim against Pandya related to his January 10, 2012 decision**.

**1.**     Plaintiff alleges that Pandya took plaintiff off all of his medications on January 10, 2012 and notes that he (plaintiff) was never seen by Pandya.  Doc. Ent. 1 ¶ 10.  It appears that Pandya is the Regional Medical Officer (RMO)[9] and that on January 10, 2012 he communicated the decision to "taper off over 6 weeks.  Start at 75 mg daily for 2 weeks then 50 mg daily for 2

---

[9]"Regional Medical Officers report to the Chief Medical Officer."  MDOC PD 01.01.101, effective 9/18/2013, ¶ B.2.a.1.a.

14

weeks then 25 mg daily for 2 weeks."  Pandya also requested that paperwork be sent to the Pain Management Committee (PMC) in 30 days.  *See* Doc. Ent. 22-3 at 46.

**2.**     42 U.S.C. § 1997e governs suits by prisoners.  As to the applicability of administrative remedies, the statute provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

**3.**     MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective July 9, 2007, describes the MDOC's three-step grievance process.  *See id.*, ¶¶ P-GG.  Defendants contend that plaintiff "did not file a grievance regarding his allegations against Dr. Pandya."  Doc. Ent. 22 at 12. Specifically, defendants argue that "Mahaffey has not properly exhausted his Complaint allegations as to Dr. Pandya because he did not properly complete the grievance process regarding the issue raised in his Complaint."  Doc. Ent. 22 at 17-19.

Citing ¶ 10 of the complaint, defendants note that Mahaffey has filed three Step III grievance appeals during his incarceration at JCF - JCF-2012-12-2947-12D1 (Doc. Ent. 1 at 14-20, Doc. Ent. 22-3 at 19-24), JCF-2012-06-1280-07A (Doc. Ent. 22-3 at 25-40) and JCF-2012-02-0368-12f  (Doc. Ent. 22-3 at 41-51).  Doc. Ent. 22 at 17-18.

**4.**     Plaintiff's February 16, 2012 grievance (JCF-00368) concerns the Pain Management Committee's removal of all of plaintiff's medications.  Doc. Ent. 22-3 at 44.  Plaintiff's June 12, 2012 grievance (JCF-01280) concerned an appeal of a June 8, 2012 administrative hearing regarding a $5.00 charge for medical services.  Doc. Ent. 22-3 at 30.  Finally, plaintiff's

December 27, 2012 grievance (JCF-02947) concerned surgical correction of plaintiff's spine. Doc. Ent. 22-3 at 23.

**5.**     In his complaint, plaintiff claims that he has exhausted his administrative remedies and complied with the Prisoner Litigation Reform Act (PLRA).  Doc. Ent. 1 at 13 ¶ 24.  In his March 12, 2014 response, plaintiff specifically offers that in JCF-02947 he "stated that he had no way of knowing all who were involved and he requested to be provided these names[,]" and that the Step I, Step II and Step III respondents did not provide these names.  Doc. Ent. 27 at 2.  In the JCF-02947 Step I Grievance Form, plaintiff explained that he "ha[d] no way of knowing who specifically has refused and continues to refuse proper medical treatment[,]" and presumably refers to ¶ R of MDOC PD 03.02.130,[10] stating, "this is all the information 'available'[.]" Doc. Ent. 22-3 at 23.

**6.**     However, the Court should consider JCF-00368 (Doc. Ent. 22-3 at 41-51) as having exhausted plaintiff's claim(s) against Pandya related to his January 10, 2012 decision to take plaintiff off of his medications (Doc. Ent. 1 ¶ 10).  To begin, of the aforementioned three (3) JCF grievances that plaintiff pursued through Step III, JCF-00368, which was received at Step I on February 16, 2012, is most closely related in time to Pandya's January 2012 decision of which plaintiff complains.

---

[10]"A grievant shall use a Prisoner/Parolee Grievance (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter; however, handwriting must be legible. The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). *Dates, times, places, and names of all those involved in the issue being grieved are to be included.* Information should be confined to the form and not written on the back, sides, or margins of the form, or in the response area."  MDOC PD 03.02.130, effective July 9, 2007, ¶ R (emphasis added).

More importantly, the substance of the JCF-00368 grievance mirrors the subject matter of plaintiff's claim against Pandya. Specifically, the Step I grievance mentions the PMC's removal of plaintiff from all of his medications (*see* Doc. Ent. 22-3 at 44), and it seems that the January 10, 2012 clinical progress note apparently authored by Pandya (Doc. Ent. 22-3 at 46) was attached to the Step I Grievance Response in JCF-00368 (Doc. Ent. 22-3 at 45). The Step I respondent referred to Dr. Miles's January 10, 2012 submission to the RMO, the PMC's deference of that request and the communication to Dr. Miles that he needed to complete paperwork for the PMC as soon as possible. Furthermore, the Step II grievance appeal takes issue with the PMC's refusal to provide surgery or pain medication, and the Step III grievance appeal takes issue with the PMC's failure to respond and render a decision (Doc. Ent. 22-3 at 42). Additionally, the Step II Grievance respondent's investigation referred to the RMO's January 10, 2012 response (Doc. Ent. 22-3 at 43).

Finally, my conclusion is unchanged by the absence of Pandya's name in JCF-00368. While acknowledging that MDOC PD 03.02.130 ¶ R directs that "names of all those involved in the issue being grieved are to be included[,]" the Court recognizes that (a) plaintiff may not have known Pandya's identity when JCF-00368 was initiated on or about February 15, 2012[11] and (b) JCF-00368 specifically names the PMC.[12] Thus, assuming that Pandya is a member of the PMC,

---

[11]In his March 12, 2014 response, plaintiff states that "through independent investigation and review of medical records, Dr. Pandya was one of the names this Plaintiff was requesting." Doc. Ent. 27 at 2.

[12]"If Plaintiff was unaware of the names of the individuals in question he could simply have asserted the grievance against "unknown" or "unidentified" persons or otherwise described the relevant events in sufficient detail *to inform prison officials* of the conduct of which he was complaining. Plaintiff has demonstrated that he clearly understands this concept. In a great many of the grievances discussed above, Plaintiff was unaware of the name of the individual(s) against whom the grievance was asserted. Plaintiff was nonetheless able to sufficiently grieve the matter in

17

it is fair to say that JCF-00368 exhausts plaintiff's claims against Pandya related to his January 10, 2012 decision. Moreover, based upon the apparent attachment of Pandya's January 10, 2012 clinical progress note (Doc. Ent. 22-32 at 46) to the February 21, 2012 Step I Grievance Response (Doc. Ent. 22-3 at 45), it is also fair to say that prison officials had notice that plaintiff was taking issue with the January 10, 2012 decision.[13]

### G. McCauley, Hamblin, Turner and Pandya are entitled to Eleventh Amendment immunity with regard to plaintiff's claims against them in their official capacities to the extent plaintiff seeks damages.

**1.** Plaintiff sues defendants in both their personal and official capacities. Doc. Ent. 1 at 1. Furthermore, plaintiff seeks injunctive relief and monetary damages. Doc. Ent. 1 at 4.

---

question by identifying the person in question by reference to their job title or job duties or by simply describing the relevant events in sufficient detail *to enable prison officials to discern* the individual(s) and/or conduct in question." *Jones v. Maroulis*, No. 1:10–CV–300, 2011 WL 6960610, 13 (W.D. Mich. Nov. 28, 2011) (report and recommendation of Carmody, M.J.) (emphasis added).

[13]*See Beedle v. DeMasi*, No. CIVA 05-70430, 2006 WL 2700753, 3 (E.D. Mich. Sept. 18, 2006) (Tarnow, J., accepting report and recommendation of Morgan, M.J.) ("while plaintiff did not identify Dr. Hutchinson by name in the grievance, plaintiff identified him by title. Dr. DeMasi does not deny that Dr. Hutchinson is CMS' medical director. Certainly, there is no substantive difference between identifying a defendant by name or by his correct title. Either method of identification is adequate *to give notice to the individual* that a grievance has been filed against him. . . . Plaintiff's reference to the "CMS Director" constituted sufficient identification of Dr. Hutchinson for exhaustion purposes. Moreover, an organization such as CMS can only act through its agents. A grievance alleging wrongdoing by the "CMS Medical Director" is, in the court's view, sufficient to constitute a grievance against CMS itself.") (emphasis added); *Skinner v. Unknown Grandson*, No. 05-70556, 2006 WL 1997392, 6 (E.D. Mich. July 14, 2006) (Borman, J., accepting report and recommendation of Komives, M.J.) ("defendant Birkett was named in plaintiff's first grievance. Although plaintiff did not use Birkett's name, he did identify as a respondent the Warden. As there was only one Warden at the facility-Birkett-this was sufficient to grieve plaintiff's claims against defendant Birkett. The purpose of the exhaustion requirement is *to give notice to prison officials* of the inmates claims so that the complaints can be resolved by prison administrators in the first instance. *See Thomas v. Woolum*, 337 F.3d 720, 722-23 (6th Cir.2003). Identifying a particular individual accomplishes this purpose, regardless of whether the individual is identified by his name, position, or other information in the grievance.") (emphasis added); *see also Woodford v. Ngo*, 548 U.S. 81, 83 & 87 (June 22, 2006) ("proper exhaustion of administrative remedies is necessary.").

Defendants assert that "defendants are employees of the State of Michigan who acted in their official capacities.  The State of Michigan has not consented to suit, and the defendants enjoy Eleventh Amendment immunity in their official capacities."  Doc. Ent. 22 at 20.

**2.**	In support of his claim that defendants knew of his injury and pain, plaintiff contends that he had shown defendants a copy of his MRI report, has put in medical kites, and has filed grievances.  Plaintiff also notes that he sometimes had to be taken to the hospital because "the pain was so bad that he [could not] put his feet on the ground."  Yet, plaintiff claims, defendants at the prison would tell him it is because he is overweight and there is nothing wrong with him.  Then, plaintiff claims, "after the defendants read his medical records from the hospital they knew he was seriously injured but refused to do anything about hi[s] [injury]."  It is plaintiff's position that "being [an] MDOC employee does not give these defendants the right to violate the Eight[h] [A]mendment."  Doc. Ent. 30 at 2 ¶ 3.

**3.**	***Having considered the parties' arguments, an explanation of Eleventh Amendment immunity is helpful.  To begin, the Eleventh Amendment would bar plaintiff's claims against defendants McCauley, Hamblin, Turner and Pandya in their official capacities to the extent plaintiff seeks damages.***  This is so, because, to the extent plaintiff sues defendants in their official capacities, it "is not a suit against the official but rather is a suit against the official's office."  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *see also Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) ("It is undisputed that since Butler has been sued in her official capacity, Mingus's ADA claim is, for all intents and purposes, against the state of Michigan as the real party-in-interest.").  Thus, plaintiff's claims against defendants in their official capacities are claims against the State of Michigan, and "the Eleventh Amendment bars a

damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). In other words, "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Graham*, 473 U.S. at 169 (citation omitted).

As the United States Supreme Court has explained, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

4.      "On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Papasan*, 478 U.S. at 278.  Therefore, ***the Eleventh Amendment would not bar any claims by plaintiff against defendants McCauley, Hamblin, Turner and Pandya in their official capacities to the extent plaintiff seeks injunctive or declaratory relief.*** *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 6 (1st Cir. 2007) ("consistent with the Eleventh Amendment, Flores Galarza is amenable to suit in his official capacity for injunctive and declaratory relief, but is protected from damages in his personal capacity by the doctrine of qualified immunity."); *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996) ("It is black letter law that the Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims.") (citing *Ex Parte Young*, 209 U.S. 123, 149 (1908)).

5.      ***Finally, the Eleventh Amendment would not bar plaintiff's claims against defendants McCauley, Hamblin, Turner and Pandya in their personal capacities to the extent plaintiff***

20

*seeks damages.* This is so, because "[s]tate officers are subject to § 1983 liability for damages in their personal capacities . . . even when the conduct in question relates to their official duties." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997) (citing *Hafer v. Melo*, 502 U.S. 21, 25–31 (1991)); *see also Alden v. Maine*, 527 U.S. 706, 757 (1999) ("Even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally.") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–238 (1974); *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 462 (1945)); *Papasan v. Allain*, 478 U.S. 265, 278 n.11 (1986) ("When a state official is sued and held liable in his individual capacity, however, even damages may be awarded.") (referencing *Scheuer v. Rhodes*, 416 U.S. 232, 237–238 (1974)).

**H.     At this time, the Court need not address whether McCauley, Hamblin, Turner and Pandya are entitled to qualified immunity.**

**1.** Finally, defendants argue that they are entitled to qualified immunity. Doc. Ent. 22 at 19-22. As the United States Supreme Court has stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982).[14]

The Sixth Circuit has stated that the qualified immunity inquiry requires a three-step analysis: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person

---

[14]Furthermore, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818-819.

would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and

supported the allegations by sufficient evidence, to indicate that what the official allegedly did

was objectively unreasonable in light of the clearly established constitutional rights." *Williams*

*v. Mehra*, 186 F.3d 685, 690 (6ᵗʰ Cir. 1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151,

1157-58 (6th Cir.1996)).[15]  *See also Higgason v. Stephens*, 288 F.3d 868, 876 (6ᵗʰ Cir. 2002).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that

the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306,

311 (6ᵗʰ Cir. 2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th

Cir.2004)).

Importantly, the defense of qualified  immunity is best addressed after determining

whether plaintiff has stated a constitutional claim upon which relief can be granted.  "[T]he

better approach to resolving cases in which the defense of qualified immunity is raised is to

determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.

Normally, it is only then that a court should ask whether the right allegedly implicated was

---

[15]*See also Saucier v. Katz*, 533 U.S. 194 (2001), wherein the Supreme Court stated, "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.  *See also Drogosch v. Metcalf*, 557 F.3d 372, 377 (6ᵗʰ Cir. Feb. 25, 2009) (citing *Saucier*, 533 U.S. at 201).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Also, the Supreme Court has stated, "[a]lthough we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that *it is often beneficial*." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (Jan. 21, 2009) (emphasis added).

clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

**2.**    Specifically, defendants assert that "Mahaffey has failed to establish a violation of his rights under the Eighth Amendment.  Since no constitutional or federal law violation has occurred, Defendants are entitled to qualified immunity."  Doc. Ent. 22 at 22.

In response, plaintiff refers to his many health care kites, his kites to the HUMs and his numerous grievances, claiming that he "went far beyond the scope of merely notifying these Defendants that he was in constant pain[,]" and that defendants were made "aware of the violations they were committing."  Doc. Ent. 27 at 2-3.  Citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982), plaintiff claims these defendants "were medical providers in some form or another.  They knew the treatment they should have been providing to this Plaintiff given the severe pain he was in everyday, and 'chose' not to do anything about it."  Doc. Ent. 27 at 3; *see also* Doc. Ent. 30.

**3.**    Here, the Court need not discuss whether defendants McCauley, Hamblin, Turner and Pandya are entitled to qualified immunity.  The sum of defendants' qualified immunity argument (*see* Doc. Ent. 22 at 22) is based upon plaintiff's alleged failure to satisfy the first prong of a qualified immunity analysis - whether plaintiff has alleged a constitutional deprivation.  *County of Sacramento*, 523 U.S. at 841 n.5.

If the Court agrees with my foregoing recommendations, then plaintiff has not alleged a constitutional deprivation by McCauley, Hamblin or Turner.  Furthermore, while the claim against Pandya survives the instant motion, it is not because it has been evaluated on the merits; rather, defendants only challenged the claim against Pandya on the basis of exhaustion.  Having

23

concluded that plaintiff has exhausted his claim as to Pandya regarding his January 10, 2012 decision, and defendants not having addressed this claim on the merits, the Court need not, at this point, determine whether Pandya is entitled to qualified immunity as to the claim against him.

### III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 28, 2014                               s/Paul J. Komives
                                                                PAUL J. KOMIVES
                                                                UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 28, 2014, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager to the
Honorable Paul J. Komives