UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MAHAFFEY,

       Plaintiff,

v.

Case No. 13-14646
District Judge John Avern Cohn
Magistrate Judge Anthony P. Patti

JOSHUA BUSKIRK, *et al.*,

       Defendants.

_____/

# REPORT AND RECOMMENDATION ON DEFENDANTS PANDYA AND STIEVE'S MOTIONS FOR SUMMARY JUDGMENT  (DE 46, 54)

**I.  RECOMMENDATION**: The Court should grant Defendant Pandaya's Second Motion for Summary Judgment (DE 46) and Defendant Stieve's Motion for Summary Judgment.  (DE 54.)

**II.  REPORT**

    **A. Background**

The Court set out the factual background in this case in its Report and Recommendation dated May 28, 2014.  (DE 34.)  The Undersigned incorporates the May 28, 2014 Report and Recommendation and will only set out the facts necessary to dispose of the instant motions.

1

Plaintiff, Mark Mahaffey, is a state prisoner who is proceeding without the assistance of counsel. He filed his Complaint and Application to Proceed *in Forma Pauperis* on November 8, 2013. (DE 1, 2.) The Court granted the application on December 13, 2013. (DE 5.) Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment of the United States Constitution. He asserts his claims against medical personnel employed by the Michigan Department of Corrections ("MDOC") and Corizon Correctional Healthcare ("Corizon"), a contract medical provider to the MDOC.

According to his Complaint, Plaintiff suffers from back pain, incontinence, numbness in his left leg, and weakness in both legs. (Compl. ¶ 6, DE 1.) His Complaint, however, focuses only on Plaintiff's back pain. Plaintiff contends that his back pain began in 2001 when he herniated a disc while lifting weights and returned in 2009, when he threw his back out while trying to pick up a pair of shorts. (Id. at ¶ 5.) Plaintiff asserts that despite his numerous kites and grievances complaining of his lower back pain, the various Defendants have refused to provide the treatment he needs to manage his pain. Specifically, he contends that in 2011, a Dr. Miles began administering "triggerpoint injections" in his lower back, until he was "taken off all medications" by Dr. Pandaya in 2012. (Id. at ¶ 10.) Dr. Miles continued to treat Plaintiff, but he asserts that Corizon and Dr. Stieve refused "any pain medication or treatment that Dr. Miles would order," until

Dr. Miles was let go and Plaintiff began to see Dr. Jacobs. (Id. at ¶ 11.) Plaintiff sues all Defendants in their personal and official[1] capacities and seeks injunctive relief as well as compensatory and punitive damages.

Dr. Pandaya filed his Second Motion for Summary Judgment on July 1, 2014.[2] He asserts that he is entitled to summary judgment for two reasons. First, he contends that Plaintiff fails to establish a deliberate indifference claim under the Eighth Amendment because he was examined and provided treatment by healthcare personnel. Dr. Pandaya asserts that Plaintiff was not denied medical care, and merely disagrees with the course of treatment provided to him. Second, Dr. Pandaya argues that he is entitled to qualified immunity because he acted reasonably and did not violate Plaintiff's clearly established constitutional rights.

---

[1] On June 24, 2014, the Court concluded that Plaintiff's claim for money damages against Dr. Pandaya in his official capacity was barred by the Eleventh Amendment. (DE 44.)

[2] Plaintiff challenges Dr. Pandaya's Second Motion under Local Rule 7.1, which provides that a party must "obtain leave of court to file more than one motion for summary judgment." E.D. Mich. LR 7.1(b)(2). Dr. Pandaya filed his first Motion for Summary Judgment on February 13, 2014. (DE 22.) On July 1, 2014, Dr. Pandaya filed the instant motion along with a Motion for Leave to File Second Motion for Summary Judgment pursuant to the Local Rules, which the Court granted on July 2, 2014. (DE 49.) Accordingly, Plaintiff's challenge on this basis is misplaced.

Dr. Stieve filed his Motion for Summary Judgment on July 21, 2014.[3] He contends that he is entitled to summary judgment for three reasons. First, he asserts that Plaintiff has failed to establish that Dr. Stieve was personally involved in the activity that forms the basis of his Complaint, as is required to establish liability under 42 U.S.C. § 1983. Second, he argues that he is entitled to Eleventh Amendment immunity, as a state employee who acted in his official capacity. Finally, he asserts that he is entitled to qualified immunity because he acted reasonably and did not violate Plaintiff's clearly established constitutional rights.

Plaintiff opposes both motions. In his Response to Dr. Pandaya's Motion, he asserts that Dr. Pandaya demonstrated deliberate indifference to Plaintiff's medical needs because he knew the extent of Plaintiff's injuries and denied his medication with full knowledge of the pain it would cause. He contends that Dr. Pandaya's state of mind was sufficiently culpable because he had no reason to deny Plaintiff's medication, other than to cause Plaintiff to suffer and save money. Further, he notes that, as the Michigan Department of Corrections' Regional Medical Officer ("RMO"), Dr. Pandaya was required to review every request, indicating that he had direct involvement in Plaintiff's medical care. Finally, he

---

[3] Plaintiff challenges the timing of Dr. Stieve's Motion for Summary Judgment under Federal Rule of civil Procedure 72(a). The fourteen-day period referred to in the rule, however, relates to the parties' timeline to file objections to a Magistrate Judge's report and recommendation, and not to the filing of a motion for summary judgment. Dr. Stieve's Motion for Summary Judgment is timely filed.

4

asserts that Dr. Pandaya is not entitled to qualified immunity because Plaintiff's numerous kites and grievances made him aware of the violations he was committing.

Similarly, in his response to Dr. Stieve's Motion, Plaintiff contends that Dr. Stieve was personally involved in his medical care because he was the Chief Medical Officer ("CMO"). According to Plaintiff, Dr. Stieve was aware of his grievances and failed to address the problems. Plaintiff asserts that Dr. Stieve made his decisions in order to cause Plaintiff to suffer and to save money. Further, Plaintiff disagrees that Dr. Stieve is entitled to Eleventh Amendment immunity and qualified immunity because his actions in ignoring Plaintiff's healthcare kites and grievances were not reasonable.

### B. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."

6

*Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### C. Discussion

Plaintiff asserts that Defendants Pandaya and Stieve were deliberately indifferent to his medical needs in violation of the Eighth Amendment of the United States Constitution. Dr. Pandaya contends that he is entitled to summary judgment because Plaintiff fails to establish that he was deliberately indifferent to Plaintiff's medical needs. Dr. Stieve asserts that he is entitled to summary judgment because Plaintiff fails to demonstrate that he was personally involved in the allegedly unconstitutional activity. Both Defendants assert that they are entitled to immunity on Plaintiff's claims. The Court will address each argument in turn.

### 1. Eighth Amendment Claim (Dr. Pandaya)

"The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment—constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976)).

7

The Court applies a two-prong test with objective and subjective components to assess claims of deliberate indifference to serious medical needs of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the plaintiff must show that the deprivation alleged is "objectively, 'sufficiently serious.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the plaintiff must show that the prison official committing the act did so with a "'sufficiently culpable state of mind.'" *Id.* (citing *Wilson*, 501 U.S. at 302-03). The United States Court of Appeals for the Sixth Circuit applies the test as follows:

> First, we determine whether the plaintiff had a sufficiently serious medical need under the objective prong. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. Second, we determine whether the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong.

*Burgess*, 735 F. 3d at 476 (internal citations and quotations omitted). To succeed on the subjective prong, a plaintiff must show "more than mere negligence, but something less than specific intent to harm or knowledge that harm will result. . . ." *Id.* (citing *Farmer*, 511 U.S. at 835). Specifically, the conduct must "demonstrate deliberateness tantamount to an intent to punish." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). However, "a prisoner is not required to show that he [or she] was literally ignored by the staff to prove an Eighth Amendment violation, only that his [or her] serious medical needs were consciously

8

disregarded." *Rouster v. Cnty. of* Saginaw, 749 F. 3d 437, 448 (6th Cir. 2014). Put another way,

> [a] government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm.

*LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

Dr. Pandaya argues that Plaintiff fails to establish the subjective prong of the test. At the time relevant to Plaintiff's Complaint, Dr. Pandaya was the Michigan Department of Corrections' RMO for the Southern Region. (Pandaya Aff. ¶ 1, DE 46-2.) Dr. Pandaya avers that, while he did not provide direct care to Plaintiff or directly supervise anyone who did, he reviewed two non-formulary medication requests from Plaintiff's treating physician. The first, on October 14, 2011, was for Baclofen and Amitriptyline (Elavil). Dr. Pandaya approved the Elavil and deferred the Baclofen with tapering instructions. The second medication request, on January 10, 2012, was for Elavil. In the time between Plaintiff's first and second request, Elavil was added to the list of drugs requiring the approval of the Pain Management Committee ("PMC"). (Id. at ¶ 8.) Accordingly, Dr. Pandaya deferred the Elavil with tapering instructions and a recommendation that the requesting practitioner refer the request to the PMC. On April 16, 2012, Dr. Pandaya received an off-guideline medical details and special accommodations

9

request for a half-inch heel lift for Plaintiff's right shoe. He approved a quarter-inch inside shoe lift, but deferred the half-inch request.

Dr. Pandaya contends that these facts show that Plaintiff is not alleging that he was denied medical care, but that the care he received was inadequate to such a degree that it exposed him to a risk of serious harm. Where, as here, the plaintiff has received some medical treatment but disagrees with the level of care provided, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 527 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010) (noting that "courts are generally reluctant to second guess the medical judgment of prison medical officials"); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation"). In such a circumstance, "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made," but instead should "make certain that professional judgment in fact was exercised." *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982) (internal citations omitted).

This argument is well taken. The record adequately demonstrates that Plaintiff was being treated for his back pain and that Dr. Pandaya approved at least some of his treating physician's medication requests. Furthermore, Dr. Pandaya avers that his reasons for tapering Plaintiff's Elavil had to do with its addition to the list of drugs requiring approval by the PMC, which indicates that Dr. Pandaya made a reasonable professional judgment that the Court need not second guess.

Plaintiff fails to adduce competent evidence to establish that Dr. Pandaya consciously disregarded his medical needs. To prevail on his claim, he would need to show that Dr. Pandaya's state of mind was sufficiently culpable, such that his various denials were tantamount to an intent to punish. In his Response, Plaintiff indicates that Dr. Pandaya knew about Plaintiff's pain and acted with the intent to cause Plaintiff to suffer. This unsworn and conclusory argument is insufficient to create a genuine dispute of material fact. *See U.S. v. State of Mich.*, 940 F.3d 143, 154 n. 7 (6th Cir. 1991) (noting that "the subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions . . . of the prisoners or their representatives"); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006) (concluding that the district court properly dismissed the plaintiff's claim for deliberate indifference because his conclusory allegations that medical professionals denied treatment with full knowledge of his condition was not

11

sufficient to show that defendants acted with deliberateness tantamount to the intent to punish); *Street v. Corr. Corp. of America*, 1996 F. App'x 810, 815 n. 13 (6th Cir. 1996) (finding no genuine dispute of material fact where there was evidence that the inmate's medical care was adequate and plaintiff merely "offer[ed] his own conclusory statements to the contrary"); *Garrison v. Davis*, No. 06-cv-13258, 2010 WL 3719905, at *5 (E.D. Mich. Aug. 16, 2010) *report and recommendation adopted* No. 06-13258, 2010 WL 3732219 (E.D. Mich. Sept. 17, 2010) ("Plaintiff makes much of the fact that he believes [the medications provided were] less costly forms of treatment. However, even if true, cost control measures initiated by state and local governments by themselves are not unconstitutional") (internal citations omitted).

 Although he takes issue with Dr. Pandaya's denial of some of his medication requests, Plaintiff does not dispute that he has visited medical professionals at the Robert G. Cotton Correctional Facility and received treatment for his back pain. (Compl. ¶¶ 10, 13.) Nor does he establish that the treatment he received was so woefully inadequate as to amount to no treatment at all. *See, e.g.*, *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (concluding that the plaintiff failed to establish deliberate indifference where he was able to see a nurse immediately after a neck injury, and was treated with an x-ray and soft surgical collar); *Cooper v. Shelby Cnty. Justice Ctr.*, No. 99-6365, 2000 WL 924604, at *2 (6th Cir. June

12

26, 2000) ("Because [the plaintiff] admitted in his complaint that he had been examined by medical staff during his confinement . . . and his allegations stem from his disagreement with the medical diagnosis and treatment provided to him, his allegations are insufficient to establish an Eighth Amendment claim for deliberate indifference to a serious medical need"). Accordingly, it is recommended that the Court grant Dr. Pandaya's Motion for Summary Judgment. (DE 46.)

### 2. Personal Involvement Under § 1983 (Dr. Stieve)

Plaintiff alleges that while he was being treated by Dr. Miles in 2011, Dr. Stieve "would refuse any pain medication or treatment that Dr. Miles would order." (Compl. ¶ 11, DE 1.) Dr. Stieve has been the CMO of the Michigan Department of Corrections since 2008. Prior to that, he held the position of Northern Region RMO. In his current position, he does not directly supervise anyone with direct patient care. (Stieve Aff. ¶ 4, DE 54-2.) Nor does he respond to grievances or prisoner correspondence. (Id. at ¶ 8.) Dr. Stieve acknowledges that, while he has never provided Plaintiff with direct care, he responded to one of Plaintiff's medical requests when he was the Northern Region RMO, *prior to the events that form the basis of Plaintiff's allegations against him*. Specifically, he deferred Plaintiff's September 10, 2007 request for a cushioned insert to help with plantar fasciitis, *an ailment that Plaintiff does not mention in his Complaint*. (Id. at

13

¶ 6.) Dr. Stieve argues that Plaintiff fails to set forth a viable claim under § 1983 because he does not allege that Dr. Stieve was personally involved in the allegedly unconstitutional activities.

To establish a viable claim under § 1983, a plaintiff must establish that he or she was deprived of a right "'secured by the Constitution and the laws of the United States' by one acting under color of law." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978)). "[E]ach defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). "*Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Instead, liability under § 1983 "'must be based on more than . . . the right to control employees.'" *Comstock v. McCrary*, 273 F.3d 693, 712-713 (6th Cir. 2002) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Specifically, the United States Court of Appeals for the Sixth Circuit has addressed the requirements for supervisory liability to attach under § 1983 as follows:

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official *at least implicitly authorized, approved, or knowingly acquiesced* in the unconstitutional conduct of the offending officers."

14

*Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cnty., Ky.,* 688 F.2d 869, 874 (6th Cir. 1982) (emphasis added)).

As best as the Court can discern, Plaintiff is attempting to bring a supervisory liability claim against Dr. Stieve in his role as CMO. Plaintiff does not, however, proffer any evidence to show that Dr. Stieve authorized, approved, or knowingly acquiesced in any unconstitutional conduct. Plaintiff asserts that Dr. Stieve denied his requests, but does not provide any grievance or medical records to indicate Dr. Stieve's personal involvement in the allegedly unconstitutional conduct. To be sure, Dr. Stieve concedes that he deferred one of Plaintiff's requests in 2007, but that request was for a condition unrelated to the back pain that forms the basis of Plaintiff's claims. Furthermore, Plaintiff's only allegation against Dr. Stieve occurred four years later in 2011, the year in which Plaintiff asserts that Dr. Stieve began denying Dr. Miles' requests for pain medication. (Compl. ¶ 11.) While Plaintiff contends that Dr. Stieve knew of his back condition and was deliberately indifferent to his pain, he fails to proffer any evidence to contradict Dr. Stieve's sworn statements that he has not supervised anyone providing patient care and has not received prisoner grievances since starting as CMO in 2008. Accordingly, the Undersigned recommends that the Court grant Dr. Stieve's Motion for Summary Judgment. (DE 54.)

15

### 3. Eleventh Amendment Immunity (Dr. Stieve)

Even if Plaintiff's claims against Dr. Stieve were to survive summary judgment with respect the merits of his §1983 claim, to the extent Plaintiff sues Dr. Stieve for money damages in his official capacity, those claims are barred by the Eleventh Amendment. Where a plaintiff sues a defendant in his or her official capacity, it "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff's claims against Dr. Stieve in his official capacity, therefore, are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Put another way, "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Id.* at 169 (internal citation omitted). Thus, even if the Court disagrees with the foregoing recommendation on the merits, the Eleventh Amendment remains a bar to Plaintiff's claim for money damages against Dr. Stieve in his official capacity.

### 4. Qualified Immunity (Drs. Pandaya and Stieve)

Both Defendants Pandaya and Stieve assert that they are entitled to qualified immunity. The Court conducts a two-step analysis in assessing qualified immunity. First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was

clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009).

Drs. Pandaya and Stieve are entitled to qualified immunity under the first step of the analysis. For the reasons stated above – even assuming the existence of a clearly established constitutional right – Plaintiff has failed to establish that Drs. Pandaya and Stieve violated the right in question. Accordingly, in addition to the other reasons given in this report for summary judgment to be granted, it is recommended that Drs. Pandaya and Stieve are entitled to qualified immunity on Plaintiff's claims against them.

### III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: February 13, 2015            s/Anthony P. Patti                         
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 13, 2015, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Case Manager for the
                                      Honorable Anthony P. Patti
                                      (313) 234-5200