UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MAHAFFEY,

               Plaintiff,

                                   Case No. 2:13-cv-14646

v.                             District Judge Avern Cohn
                              Magistrate Judge Anthony P. Patti

JOSHUA BUSKIRK, *et al.*,

               Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 63)

**I.**     **RECOMMENDATION**:  The Court should grant Defendants Squier and Buskirk's Motion for Summary Judgment.  (DE 63.)

**II.**     **REPORT**

        **A.**     **Background**

      The Court set out the factual background in this case in its Report and Recommendation dated May 28, 2014.  (DE 34.)  The Undersigned incorporates the May 28, 2014 Report and Recommendation and will only set out the facts necessary to dispose of the instant motion.

      Plaintiff Mark Mahaffey, who is proceeding without the assistance of counsel, filed his Complaint and Application to Proceed *in Forma Pauperis* on

November 8, 2013. (DE 1, 2.) The Court granted the application on December 13, 2013. (DE 5.) At the time, Plaintiff was a state prisoner, housed at the G. Robert Cotton Correctional Facility. Since then, Plaintiff has apparently been released and is living at a private address in Florida. (DE 69.) Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment of the United States Constitution. He asserts his claims against medical personnel employed by the Michigan Department of Corrections ("MDOC") and Corizon Correctional Healthcare ("Corizon"), a contract medical provider to the MDOC.

According to his Complaint, Plaintiff suffers from lower back pain, in addition to several other unrelated conditions. He contends that the back pain began after a dead lifting incident in 2001 and returned in 2009. (Id. at ¶ 5.) Plaintiff alleges that Defendants have generally failed to treat and manage his pain. Specifically, he asserts that Dr. Harriet Squier denied his request to see a neurosurgeon. In addition, despite never seeing Plaintiff, Dr. Squier noted in his medical chart that "weight loss would be beneficial" in treating Plaintiff's back pain. (Compl. ¶ 13, DE 1.) Plaintiff contends that physician's assistant Buskirk took away his various accommodations, including bottom bunk detail, a cane, a cotton blanket, and his Transcutaneous Electrical Nerve Stimulation Unit ("TENS

Unit").[1]  (Id. at ¶ 17.)  He also alleges that Defendant Buskirk told Plaintiff that he was faking his back pain, called him names, and told him his only problem was his weight.  (Id.)

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.  He asks the Court to order Defendants to send him to a neurosurgeon for evaluation and to provide him with the back surgery he claims is necessary.  Because Plaintiff has been released from state custody, however, his claims for injunctive relief are moot.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (noting that a prisoner's request for injunctive relief from officials at a specific prison becomes moot once the prisoner no longer resides at the prison).[2]  Accordingly, the Undersigned will analyze only Plaintiff's claims for monetary damages.

### B.    <u>The Instant Motion</u>

Defendants Squier and Buskirk filed the instant Motion on November 11, 2014.  (DE 63.)  On the same day, after seeking and being granted leave of Court, they filed selections of Plaintiff's voluminous medical record under seal.  (DE 65.)

---

[1] A TENS Unit is a device that produces an electric current to stimulate the nerves and reduce pain.  *Transcutaneous electrical nerve stimulation (TENS) for chronic pain*, Nat'l Library of Med., http://www.ncbi.nlm.nih.gov/pubmed/11687055 (last visited March 27, 2015).

[2] Furthermore, as Defendants correctly point out, Plaintiff makes no showing of an irreparable injury and has adequate remedies at law.  (Mot. at 26-27, DE 63.)

3

In their Motion, Defendants argue that Plaintiff has failed to establish a claim under the Eighth Amendment because he cannot show that Defendants were deliberately indifferent to his serious medical needs. They contend that Plaintiff has not been denied medical treatment and merely disagrees with the type of treatment he received.

On December 5, 2014, the Court issued an Order requiring Plaintiff to respond to Defendants' Motion on or before January 20, 2015. (DE 67.) To date, Plaintiff has not filed a response. In fact, this is the second dispositive motion to which Plaintiff has failed to file a response. (*See* DE 38.) The only document Plaintiff has filed in 2015 has been a notice of change of address. (DE 69.) In the interim, the Court has adopted two Reports and Recommendations: one granting Summer Laughhunn's Motion to Dismiss (DE 73) and the second granting Haresh Pandaya (DE 46) and Jeffrey Stieve's (DE 54) Motions for Summary Judgment. (DE 75.) It appears that, since his release from prison, Plaintiff has lost interest in prosecuting his case.

### C. **Standard**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing

4

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

   "The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . .   [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations

omitted).  Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

"[E]ven where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists."  *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014).  However,

> In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party. Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are "uncontroverted."

*Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992); *see also F.T.C.*, 767 F.3d at 630 n.11.

## C.  Discussion

Plaintiff brings his claims under the Eighth Amendment, asserting that Defendants have been deliberately indifferent to his medical needs.  Defendants

6

Squier and Buskirk argue that they are entitled to summary judgment because Plaintiff cannot establish an Eighth Amendment Claim.

"The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment—constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976)). The Court applies a two-prong test with objective and subjective components to assess claims of deliberate indifference to serious medical needs of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the plaintiff must show that the deprivation alleged is "objectively, 'sufficiently serious.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the plaintiff must show that the prison official committing the act did so with a "'sufficiently culpable state of mind.'" *Id.* (citing *Wilson*, 501 U.S. at 302-03). The United States Court of Appeals for the Sixth Circuit applies the test as follows:

> First, we determine whether the plaintiff had a sufficiently serious medical need under the objective prong. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. Second, we determine whether the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong.

*Burgess*, 735 F. 3d at 476 (internal citations and quotations omitted).

7

To succeed on the subjective prong, a plaintiff must show "more than mere negligence, but something less than specific intent to harm or knowledge that harm will result. . . ." *Id.* (citing *Farmer*, 511 U.S. at 835). Specifically, the conduct must "demonstrate deliberateness tantamount to an intent to punish." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). However, "a prisoner is not required to show that he [or she] was literally ignored by the staff to prove an Eighth Amendment violation, only that his [or her] serious medical needs were consciously disregarded." *Rouster v. Cnty. of Saginaw*, 749 F. 3d 437, 448 (6th Cir. 2014). Put another way,

> [a] government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm.

*LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

Defendants do not dispute that Plaintiff's requests for a referral to a neurosurgeon and surgery were denied. Defendant Squier's role with Corizon is to determine the necessity of prisoner requests for treatment by a specialist. (Squier Aff. ¶ 35, DE 63-2.) She evaluated Plaintiff's September 13, 2012 request for an evaluation by a neurosurgeon. (Id.) In a sworn affidavit, Defendant Squier testified that she denied this request because:

> As an initial matter, there were no findings of progressive loss of motor functions. If a patient shows motor function loss along with pain, then it is possible that the loss of function is being caused by

8

> nerve problems in the spine.  In the absence of these findings, surgery
> for back pain is not recommended.  The risks of back surgery include
> paralysis from errantly hitting a nerve and bleeding into the spinal
> column.

(Id.)  She also advised that Plaintiff's best course of treatment was a combination

of exercise, stretching, and rest, along with over-the-counter pain medication.  (DE

65-1 at 42.)  Finally, she indicated that weight loss would benefit Plaintiff.  (Id.)

This was Defendant Squier's only interaction with Plaintiff's medical care.

There is also no displute that Defendant Buskirk discontinued some of

Plaintiff's accommodations.  Defendant Buskirk is a physician's assistant working

for Corizon.  On January 29, 2013, Plaintiff sought renewal for his special

accommodations for bottom-bunk detail, a cane, a cotton blanket, and TENS Unit.

(Buskirk Aff. ¶¶ 2-3.)  Defendant Buskirk saw Plaintiff on February 5, 2013 to

review his accommodation requests.  (Id. at ¶ 3.)  He determined that Plaintiff's

bottom-bunk accommodation should be continued due to Plaintiff's back pain and

obesity.[3]  (Id. at ¶ 5.)  He determined that Plaintiff's accommodation for the TENS

Unit should be discontinued because:

> MDOC has determined that there is limited evidence to show that
> these units are effective in the treatment of chronic pain.  Further, in
> the correctional setting, TENS Units are often misused and abused.

---

[3] In his Complaint, Plaintiff indicates that Defendant Buskirk discontinued his
bottom-bunk restriction.  However, an exhibit attached to Plaintiff's Complaint
shows that Defendant Buskirk actually allowed that accommodation to continue.
(Special Accommodations Order dated April 8, 2013, DE 1 at 32.)

TENS Units can be refashioned to give prison tattoos, to heat up water, and to provide electric shocks to inmates.

(Id. at ¶ 6.) Defendant Buskirk also discontinued Plaintiff's cane, noting that Plaintiff walked into the clinic with no difficulty. Moreover, Defendant Buskirk assessed that Plaintiff's records indicated that he walked with no difficulty and did not need a cane to aid in his activities of daily living[4] (Id. at ¶ 7.) Defendant Buskirk discontinued Plaintiff's cotton blanket accommodation because MDOC only makes cotton blankets available to inmates with dermatitis or urticaria, which Plaintiff did not have. (Id. at ¶ 8.) Finally, Defendant Buskirk avers that he reviewed Plaintiff's MRI with Plaintiff, but did not, as Plaintiff alleges, call Plaintiff's MRI or his illness fake or speak disrespectfully to Plaintiff. (Id. at ¶ 4.) Both Defendants testify that they provided appropriate medical care to Plaintiff and did not knowingly disregard his health or medical needs. (Squier Aff. ¶¶ 48, 49, 51, DE 63-2, Buskirk Aff. ¶¶ 10, 11, DE 63-4.)

The Undersigned concludes that Defendants are entitled to judgment as a matter of law. Plaintiff has failed to adduce any evidence to indicate that Defendants Squier and Buskirk demonstrated deliberateness tantamount to the

---

[4] Plaintiff was initially given a cane as a result of his alleged 2009 back injury. On November 3, 2009, however, Plaintiff returned the cane to the medical clinic, stating that he no longer wanted to use it. (DE 65 at 629.) On March 8, 2010, Plaintiff indicated that he threw his back out again as a result of improper lifting technique. His physician ordered the cane at issue for Plaintiff at that time. (DE 65, 612-13.)

intent to punish when making his medical decisions.  Moreover, Defendants Squier and Buskirk have testified under oath that their decisions about Plaintiff's medical care were appropriate according to their medical judgment.  (Squier Aff. ¶¶ 48, 49, 51, DE 63-2, Buskirk Aff. ¶¶ 10, 11, DE 63-4.)

Because Plaintiff failed to file a Response in opposition to Defendants' Motion, the Undersigned is left to analyze the allegations in his unsworn Complaint.  Plaintiff does not specifically allege that Defendants Buskirk and Squier made their medical decisions with the intent to punish him.  He does, however, indicate that Defendants knew of his condition and failed to provide appropriate treatment.  This unsworn and conclusory statement is insufficient to create a genuine dispute of material fact.  *See U.S. v. State of Mich.*, 940 F.3d 143, 154 n. 7 (6th Cir. 1991) (noting that "the subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions . . . of the prisoners or their representatives");  *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006) (concluding that the district court properly dismissed the plaintiff's claim for deliberate indifference because his conclusory allegations that medical professionals denied treatment with full knowledge of his condition was not sufficient to show that defendants acted with deliberateness tantamount to the intent to punish); *Street v. Corr. Corp. of America*, 1996 F. App'x 810, 815 n. 13

11

(6th Cir. 1996) (finding no genuine dispute of material fact where there was evidence that the inmate's medical care was adequate and plaintiff merely "offer[ed] his own conclusory statements to the contrary.").

Although he takes issue with Defendants Buskirk and Squier's denial of some of his requests, Plaintiff does not dispute that he has visited medical professionals at the G. Robert Cotton and Saginaw Correctional Facilities and received treatment for his back pain.  (Compl. ¶¶ 10, 13.)  For example, on August 2, 2012, Plaintiff received an interspinous ligament pain injection at L3-L4.  (Id. at 576-77.)  On September 15, October 5, and December 30, 2011, Plaintiff was given Toradol shots to relieve his back pain.  (Id. at 437-44, 431-33, and 389-94.)  On March 1 and April 16, 2012, Plaintiff was given trigger point injections to treat his back pain.  (Id. at 357-59.)  Plaintiff's medical record provides evidence that he was seen frequently by medical personnel and received numerous treatments for his back pain throughout his incarceration.

Where, as here, the plaintiff has received some medical treatment but disagrees with the level and type of care provided, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 527 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010) (noting that "courts are generally reluctant to second guess the medical judgment of prison

12

medical officials"); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)

("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a

prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but

merely a degree of incompetence which does not rise to the level of a

constitutional violation").  Plaintiff also fails to establish that the treatment he

received was so woefully inadequate as to amount to no treatment at all.  *See, e.g.*,

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (concluding that the

plaintiff failed to establish deliberate indifference where he was able to see a nurse

immediately after a neck injury, and was treated with an x-ray and soft surgical

collar); *Cooper v. Shelby Cnty. Justice Ctr.*, No. 99-6365, 2000 WL 924604, at *2

(6th Cir. June 26, 2000) ("Because [the plaintiff] admitted in his complaint that he

had been examined by medical staff during his confinement . . . and his allegations

stem from his disagreement with the medical diagnosis and treatment provided to

him, his allegations are insufficient to establish an Eighth Amendment claim for

deliberate indifference to a serious medical need").

There is only one factual dispute between the parties, and it does not concern

a material fact.  Plaintiff asserts that Defendant Buskirk called him derogatory

names and said he was lying about his back pain and MRI.  Defendant Buskirk

disputes this allegation.  Even if it were true, however, such statements do not rise

to the level of an Eighth Amendment violation.  *See Ivey v. Wilson*, 832 F.2d 950,

955 (6th Cir. 1987) (concluding that verbal abuse and harassment do not give rise to a constitutional claim under the Eighth Amendment). Moreover, Defendant Buskirk has unequivocally and under oath denied making the alleged remark. (Buskirk Aff. ¶ 4, DE 63-4.) Plaintiff fails to rebut this denial with sworn or otherwise admissible evidence. Plaintiff has thus failed to introduce any genuine dispute of material fact that would preclude summary judgment. Accordingly, it is recommended that the Court grant Defendants Squier and Buskirk's Motion for Summary Judgment. (DE 63.)

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

14

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 30, 2015                   s/Anthony P. Patti
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 30, 2015, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti
                                        (313) 234-5200